UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Robert Reid</u>

    v.                                          Civil No. 04-cv-369-JD
                                                    Opinion No. 2006 DNH 077
<u>Phil Stanley, et al.</u>


<u>O R D E R</u>

      Robert Reid, who is proceeding pro se, alleges equal protection and due process violations arising from the circumstances of his incarceration in Connecticut, as a New Hampshire prisoner. The court denied the defendants' first motion for summary judgment, without prejudice, because the defendants overlooked Reid's equal protection claim, relied on affidavits based on "knowledge and belief," and failed to provide the necessary documentary support for the affidavits. The court also noted that Reid had not served the defendants with his cross motion for summary judgment or his objection to the defendants' motion. The defendants and Reid have now filed second motions for summary judgment and their objections, and the service issue has been resolved.

      With their motion, the defendants submit the affidavits of Kimberly Lacasse and Gregory Crompton, which are again based upon the affiants' "knowledge and belief." Reid challenges the defendants' affidavits as failing to comply with the requirements of Federal Rule of Civil Procedure 56(e). The defendants have not responded to Reid's objection.

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).  That rule is ordinarily applied "to each segment of an affidavit, not to the affidavit as a whole." Perez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001). Therefore, only the segments of affidavits that meet the Rule 56(e) standard may be credited for purposes of a motion for summary judgment.

Gregory Crompton states that he was the Director of Classifications at the New Hampshire Department of Corrections from 1994 until 2002.  Kimberly Lacasse followed Crompton in that job.  Both Crompton and Lacasse explain the bases of their personal familiarity with Robert Reid and his record and their familiarity with the classification system in New Hampshire. Lacasse states that she reviewed Reid's records from the Connecticut Department of Corrections and provides copies of at least some of those records.  The court accepts those parts of the affidavits that are properly supported by facts which show the affiants' personal knowledge.

## Background

Robert Reid was convicted in a New Hampshire state court of second degree assault on a New Hampshire State Trooper in 1989.

He was sentenced to ten to thirty years in prison. His minimum parole date was February 16, 2002, and his maximum release date is in 2019.[1] In February of 1998, Reid was transferred from the New Hampshire State Prison to a prison in the Connecticut Department of Corrections system pursuant to the New England Interstate Corrections Compact and an agreement between New Hampshire and Connecticut. N.H. Rev. Stat. Ann. Ch. 622-A.

Under the terms of the agreement, transferred prisoners are "subject to all the provisions of law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed." Contract for the Implementation of the Interstate Corrections Compact, ¶ 17. The defendants interpret that provision to mean that a transferred prisoner is subject to the classification procedures of the receiving state. The New Hampshire Department of Corrections, however, continues to control the parole status of a prisoner who is transferred to another state.

Reid represents that Connecticut conducts only annual reviews of prisoners' security classifications, while New Hampshire conducts classification reviews every ninety days. In addition, under the Connecticut procedures, a prisoner will not be given a reduced custody classification until he has a firm

---

[1]There is some indication in the documents provided by the defendants that Reid's original minimum parole date was August 29, 1999. Both Reid and the defendants, however, refer to February 16, 2002, as his minimum parole date.

"vote to parole" date.  The New Hampshire Parole Board, however, will not vote to parole unless a prisoner has been classified for reduced custody.

In 2003, Reid filed a petition for a writ of habeas corpus in state court in New Hampshire asserting that his parole eligibility in New Hampshire was being affected by the Connecticut classification system.  On August 15, 2003, the state court ordered the New Hampshire Department of Corrections to move expeditiously toward reaching an agreement with Connecticut to provide Reid a similar classification as he would be entitled to have in New Hampshire so that Reid's parole opportunity would not be delayed.  Reid filed suit in this court when he remained in the Connecticut prison system without any change in his classification.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must

present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.  When parties file cross-motions for summary judgment, the court must consider the motions separately to determine whether summary judgment may be entered under the Rule 56 standard.  Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004); Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002).


## Discussion

     Reid brings due process and equal protection claims against officials and employees of the New Hampshire Department of Corrections, Phil Stanley, Jane Coplan, Greg Crompton, Denise Heath, and Kim Lacasse.  He contends that the alleged violations of his constitutional rights arise from the incompatibility of the New Hampshire parole requirements and the Connecticut classification requirements.  He also contends that Connecticut's classification review schedule did not provide him with the same opportunity for level reduction that the New Hampshire classification procedures would have allowed.  The defendants move for summary judgment, contending that they are entitled to qualified immunity and that Reid cannot prove his claims.  Reid moves for summary judgment and opposes the defendants' motion.

I.  Defendants' Motion for Summary Judgment

The defendants contend that they are entitled to summary judgment on both of Reid's claims on the ground of qualified immunity because the applicable law was not clearly established in Reid's favor at the time in question.  Alternatively, they argue that they are entitled to summary judgment because Reid cannot prove either claim.  They also contend that defendants Stanley and Coplan are entitled to summary judgment "as there is no evidence that either of these defendants were personally involved in any of the actions that plaintiff complains about." Def. Mem at 22.

   A.  Qualified Immunity

"Qualified immunity protects public officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Valdizan v. Rivera -Hernandez, 445 F.3d 63, 64 (1st Cir. 2006) (quoting Surprenant v. Rivas, 424 F.3d 5, 14 (1st Cir. 2005)).  Courts in this circuit use "a three-step algorithm for the determination of whether a state actor is entitled to qualified immunity[:] . . . (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated

similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Pagan v. Calderon, 448 F.3d 16, 31 (1st Cir. 2006).

### 1. Due Process Claim

Reid contends that the defendants' decision to keep him incarcerated in Connecticut, where he could not satisfy the New Hampshire parole requirements because he was subject to the Connecticut security classification system, violated due process. He contends that because the New Hampshire Parole Board required him to achieve a reduced custodial classification that would allow him to be transferred to a halfway house before he would be eligible for parole, he had a liberty interest in achieving that classification. He argues that certain provisions of the New England Interstate Corrections Compact provide the basis of a liberty interest. See N.H. Rev. St. Ann. ch. 622-A. On initial review, the magistrate judge concluded that Reid stated a due process claim, based on a liberty interest in eligibility for a minimum security placement.[2]

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and

---

[2]The magistrate's finding was based, in part, on the analysis in Carillo v. DuBois, 23 F. Supp. 2d 103, 108 (D. Mass. 1998), where the court concluded that the plaintiff showed a liberty interest in his eligibility for a minimum security classification. That part of the decision in Carillo, however, was vacated upon reconsideration. See Carillo v. DuBois, 32 F. Supp. 2d 35 (D. Mass. 1999).

7

those who seek to invoke its procedural protection must establish that one of these interests is at stake."[3] <u>Wilkinson v. Austin</u>, 125 S. Ct. 2384, 2393 (U.S. 2005); <u>accord</u> <u>Pagan</u>, 448 F.3d at 32. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." <u>Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979). A convicted inmate also has no constitutional right or inherent liberty interest in a security classification. <u>See</u> <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976). Further, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." <u>Wilkinson</u>, 125 S. Ct. at 2393.

Nevertheless, a state "may under certain circumstances create liberty interests which are protected by the Due Process Clause." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). Following <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983), courts considered the language of a particular regulation to determine whether the state had created a liberty interest. <u>Wilkinson</u>, 125 S. Ct. at

---

[3]In other words, whether Reid's claim arises under procedural or substantive due process, he must prove that the defendants deprived him of a constitutionally protected interest. <u>Redondo-Borges v. U.S. Dep't of of Hous. & Urban Dev.</u>, 421 F.3d 1, 7 (1st Cir. 2005) (procedural due process claim requires proof that plaintiff has been deprived of protected liberty or property interest without due process); <u>Pagan</u>, 448 F.3d at 32 (holding that substantive due process claim requires plaintiff to prove "both that the acts were so egregious as to shock the conscience <u>and</u> that they deprived him of a protected interest in life, liberty, or property").

2393.  In Sandin, the court "abrogated the methodology of parsing the language of particular regulations" for the purpose of determining whether a state had created a protected liberty interest.  Wilkinson, 125 S. Ct. at 2394.  Instead, the liberty interest analysis depends upon whether the condition of restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484; accord Wilkinson, 125 S. Ct. at 2394-97; see also Skinner v. Cunningham, 430 F.3d 483, 486 (1st Cir. 2005); Hamm v. Latessa, 72 F.3d 947, 954 (1st Cir. 1995).

New Hampshire provides an opportunity for parole to its prisoners as a privilege, not a right.  See Knowles v. Warden, N.H. State Prison, 140 N.H. 387, 390-91 (1995).  As such, New Hampshire has not created a liberty interest in the opportunity for parole.  Bussiere v. Cunningham, 132 N.H. 747, 753-54 (1990); Baker v. Cunningham, 128 N.H. 374, 380 (1986); cf. Young v. Harper, 520 U.S. 143, 150-51 (1997) (prisoner on parole or on conditional preparole release enjoys liberty interest in that reduced custody);  Debonis v. Warden, --- A.2d ---, 2006 WL 1562567, at *3 (N.H. June 9, 2006) (paroled prisoner "afforded due process protections against unreasonable deprivations of his conditional liberty interest, including protections against an unreasonable delay between his arrest and parole revocation hearing").  See also Ainsworth v. Stanley, 317 F.3d, 1, 5 (1st Cir. 2002).  Even if an analysis of New Hampshire's statutory and

regulatory scheme for parole would be different under the Sandin standard, there was no clearly established right to parole under New Hampshire law during the time that Reid was housed in Connecticut.

New Hampshire courts have not addressed the question of whether a prisoner has a liberty interest in the New Hampshire Department of Corrections' custodial classification system or a liberty interest under the New England Interstate Corrections Compact. This court has concluded the New Hampshire classification system does not provide prisoners with a liberty interest. See Pratt v. N.H. Dep't of Corrs., 2006 WL 995121, at *9 n.7 (D.N.H. March 31, 2006) (citing Reid v. Brodeur, 2000 WL 1466147, at *2 (D.N.H. Jan. 24, 2000)); cf. Wilkinson, 125 S. Ct. at 2394-95 (finding Ohio prisoners have liberty interest in avoiding assignment to "supermax" prison); Rodi v. Ventetuolo, 941 F.2d 22, 25-26 (1st Cir. 1991) (finding protected liberty interest under Rhode Island law in avoiding transfer to administrative segregation). Courts have concluded that state law in Connecticut does not confer a liberty interest in the classification system there. See Torres v. Howell, 2006 WL 1525942, at *15-*16 (D. Conn. May 30, 2006). The only decisions that address the question of whether the New England Interstate Corrections Compact provides a liberty interest have concluded that it does not. See McCarthy v. Teta, 101 F.3d 108, 1996 WL 115330, at *2 (2d Cir. 1996) (unpublished decision); Carillo, 23

F. Supp. 2d at 108 (other parts vacated).  Therefore, there was no clearly established law during the time Reid was housed in Connecticut that the Compact provided a liberty interest or that prisoners had a protected liberty interest in being eligible for a minimum security custodial classification.

The defendants are entitled to summary judgment on Reid's due process claim in the absence of clearly established law that Reid had a protected liberty interest in any of the circumstances he alleges.

### 2. Equal Protection Claim

"The equal protection guarantee of the Fourteenth Amendment prohibits the state from 'deny[ing] any person within its jurisdiction the equal protection of the laws,'" meaning, in the context of a state's actions, "that all persons similarly situated should be treated alike."  Pagan, 448 F.3d at 34 (quoting U.S. Const. amend. XIV, § 1; other internal quotation marks omitted).  "It is well established that a challenged classification that does not involve a suspect class or impinge upon fundamental rights is accorded a strong presumption of validity."  United States v. Melendez-Torres, 420 F.3d 45, 52-53 (1st Cir. 2005) (internal quotation marks omitted).  Such a classification does not violate equal protection as long as it satisfies the rational basis test.  Id. at 53.

Reid contends that while he was housed in Connecticut he was

treated differently than New Hampshire prisoners who remained in New Hampshire prisons because of the differences between the Connecticut and New Hampshire security classification systems, which negatively affected his eligibility for parole.  The magistrate judge concluded that Reid stated an equal protection violation based on the assumption that he was similarly situated to New Hampshire prisoners in New Hampshire prisons and that no rational basis existed for the difference in treatment.  Reid does not contend that for purposes of this claim he is a member of a suspect class or that the defendants' actions implicated a fundamental right.

The defendants argue that they are entitled to qualified immunity because at the time in question, between 1998 and 2005, there was no clearly established law that prohibited their actions based on the equal protection clause.  An equal protection violation, based on an allegedly discriminatory denial of a discretionary benefit, exists if the plaintiff can prove "that (i) he was treated differently than other similarly situated supplicants and (ii) the differential treatment resulted from a gross abuse of power, invidious discrimination, or some other fundamental procedural unfairness."  Pagan, 448 F.3d at 34 (citing PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 32 (1st Cir. 1991) and Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 832 n.9 (1st Cir. 1982)).  In the context of prisons, the Equal Protection Clause is violated when prison officials make it more

12

difficult for one prisoner, when compared to other similarly situated prisoners, to obtain the benefit of parole without a rational basis for doing so.  See Settles v. U.S. Parole Comm'n, 429 F. 3d 1098, 1102  (D.C. Cir. 2005); accord Bishop v. Moran, 676 F. Supp. 416, 420-21 (D.R.I. 1987).

The law of equal protection in similar contexts was sufficiently established to put the defendants on notice that treating Reid's eligibility for reduced custody classification, which affected his eligibility for parole, differently from other similarly situated prisoners without a rational basis for doing so could result in an equal protection violation.  In addition, the defendants were put on notice of a potential equal protection problem when the New Hampshire state court resolved Reid's habeas corpus petition as follows:

> The State and the Department of Corrections
> acknowledged the different classification systems and
> have agreed to begin communications with the State of
> Connecticut to afford the defendant a similar
> classification as he would be eligible to receive in
> New Hampshire so that his parole opportunity would not
> be delayed.  The State shall move expeditiously toward
> reaching an agreement with Connecticut.

Reid v. Warden, 03-E-180 (N.H. Sup. Ct. Aug. 15, 2003).[4]  Under these circumstances, the defendants have not shown that they are entitled to qualified immunity as to Reid's equal protection claim.

---

[4] The defendants failed to address Reid's state habeas proceeding in their motion for summary judgment.

B.  Equal Protection Claim on the Merits

Although the defendants acknowledge the negative effect on Reid caused by the conflict between the Connecticut classification system and New Hampshire's parole requirements, they contend that Reid cannot show that he was treated differently than similarly situated New Hampshire inmates who were housed in New Hampshire prisons.  The defendants further argue that the state's policy of subjecting transferred prisoners to the receiving state's classification procedures is justified by a rational relationship to a legitimate government purpose. Reid has demonstrated that Connecticut's classification system is different from New Hampshire's, but he has not shown in the record submitted for summary judgment that he was treated differently than other similarly situated New Hampshire prisoners.

Whether persons are similarly situated depends on "'whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.  Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples.'" Tapalian v. Tusino, 377 F.3d 1, 6 (1st Cir. 2004).  "As with all such comparative evidence, it is the

plaintiff's burden to demonstrate that she is comparing apples to apples." Rathbun v. Autozone, Inc., 361 F.3d 62, 76 (1st Cir. 2004).

As the defendants have established, Reid has an extensive disciplinary record in the New Hampshire and Connecticut prison systems. Because of his history and continuing behavior problems, until recently, Reid was classified at or near the highest security level in both prison systems. Kimberly Lacasse, the Administrator of Classifications for the New Hampshire Department of Corrections, states in her affidavit that Reid would not have received any reduction in his classification level even if he had been housed in a New Hampshire prison. Reid has provided no evidence to the contrary or any evidence of a New Hampshire prisoner with a similar record who received a lower classification than he did.

Therefore, based on the record presented for summary judgment, taken in the light most favorable to Reid, the defendants have demonstrated that no trialworthy issue exists to support Reid's claim that he was treated differently than similarly situated New Hampshire prisoners. The defendants are entitled to summary judgment on Reid's equal protection claim. Given this outcome, it is unnecessary to address the issue of supervisory liability.

II. <u>Reid's Motion for Summary Judgment</u>

Based on the summary judgment record and as the analysis of the defendants' motion demonstrates, Reid cannot show undisputed facts that support his due process or his equal protection claim. Therefore, he is not entitled to summary judgment in his favor.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 38) is granted. The plaintiff's motion for summary judgment (document no. 41) is denied.

The clerk of court shall enter judgment in favor of the defendants and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

July 6, 2006

cc: Robert A. Reid, pro se
    Andrew B. Livernois, Esquire
    Mary E. Maloney, Esquire